# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY LEE BYRD, | CV F   03 5637 REC SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 36) |
| GAIL LEWIS, et. al., | |
| Defendants. | |

Larry Lee Byrd ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983.

**I.   RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on May 19, 2003.  On June 13, 2003, the Court dismissed the Complaint with leave to amend.  However, in that order, the Court found that the Complaint stated a cognizable Eighth Amendment claim against Defendants Coons, Bond and Krantz, and a cognizable supervisory liability claim against Defendant Lewis.  The Court granted Plaintiff the opportunity to file an Amended Complaint or proceed only against Defendants Coons, Bond and Krantz on the Eighth Amendment claim and against Defendant Lewis on the supervisory liability claim.  On June 23, 2003, Plaintiff notified the Court of his intent to proceed immediately on his

original complaint on the cognizable claims found against Defendants Coons, Bond, Krantz and Lewis.

On August 29, 2003, the Court issued Findings and Recommendations to dismiss all remaining claims and Defendants. By separate Order and on the same date, the Court forwarded Plaintiff the appropriate forms for service of the Complaint. The District Court adopted the Findings and Recommendations on June 10, 2005. (Doc. 41.)

Defendants filed an Answer to the Complaint on December 22, 2003. On October 22, 2004, Defendants filed a Motion for Summary Judgment. (Doc. 36.) Plaintiff did not oppose the Motion for Summary Judgment.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Summary Judgment Motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**III. UNDISPUTED FACTS**[1]

    A. Plaintiff arrived at Pleasant Valley State Prison ("PVSP") on November 19, 2002.

    B. Plaintiff's eyeglasses were broken before he arrived at PVSP.

    C. On November 21, 2002, two days after his arrival at PVSP, Plaintiff was seen by a doctor not named as a defendant in this action, who ordered a visual consult.

    D. On December 19, 2002, Byrd was issued a vision impaired vest.

    E. Vision impairment vests are issued to inmates to alert custodial staff that an inmate has an impairment (generally a hearing or vision impairment).

    F. The vests are given to inmates to identify them for custody and security reasons.

    G. Plaintiff did not suffer any pain as the result of not having a vision impairment vest.

    H. On January 14, 2003, Plaintiff received his old glasses back and the repairs were completed.

    I. On January 22, 2003, Plaintiff was seen by the Doctor, who noted no visual deficits during the office exam. Plaintiff also reported that the nose guard on his glasses recently broke, so they were submitted for repair.

    J. On January 24, 2003, Plaintiff received his glasses back and the nose guard was fixed. That same day, Plaintiff was observed walking on the yard wearing glasses other than the repaired pair that was issued to him earlier in the day. Plaintiff had no trouble walking, stepping over the curb without looking down. He also appeared to be reading a paper as he walked, bending his elbow only slightly to read the paper.

---

[1] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 56-260(b). Therefore, the Court compiled the statement of undisputed facts from Defendants' Statement of Undisputed Facts and Plaintiff's verified Complaint. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff neither submitted his own Statement of Disputed Facts nor addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Complaint is not contradictory.

K.  On January 31, 2003, a chrono that was previously issued to Plaintiff allowing him to be reassigned to a lower bunk was rescinded because Plaintiff had received his prescribed eye wear.

L.  On June 3, 2003, Plaintiff received his eyeglasses which had again been repaired.

M.  No only was Plaintiff seen by prison medical staff, he was also sent to Golden State Eye Center for an exam on August 8, 2003.

N.  On August 13, 2003, Plaintiff was seen by a doctor who noted that Plaintiff had been to the Ophthalmologist and was awaiting paperwork necessary to get different prescription eyeglasses.  The prison doctor also spoke with the doctor from Golden State Eye Center to better understand Plaintiff's eye care needs.

O.  Between November 21, 2002, and August 29, 2003, while housed at PVSP, Plaintiff was seen by medical staff no less than thirteen (13) times for eye care.

P.  On September 9, 2003, Plaintiff received one pair of eyeglasses.

Q.  Defendant Bond made several appointments for Plaintiff to see an Optometrist.

R.  The duties of the Medical Technical Assistants (MTAs) are set forth by the California State Personnel Board, not the Warden at any given institution.

## IV. ANALYSIS

### A. Summary of Complaint

When Plaintiff arrived at Pleasant Valley State Prison on November 19, 2002, his eyeglasses were broken.  A receiving Nurse not named in this action indicated to Plaintiff that he would need to be issued a visual impairment vest.  Plaintiff alleges that Defendants Coons, Bond and Krantz failed to provide him with the vest in violation of the Eighth Amendment.  Plaintiff further contends that Defendant Lewis is responsible under a theory of supervisory liability because she failed to perform her duties by delegating the job of responding to his inmate grievance to another individual.

### B. Eighth Amendment Claim

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious

1  medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"
2  standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in
3  objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing
4  Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a
5  "sufficiently culpable state of mind," which entails more than mere negligence, but less than
6  conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.
7  A prison official does not act in a deliberately indifferent manner unless the official "knows of
8  and disregards an excessive risk to inmate health or safety."  Id.

9        In applying this standard, the Ninth Circuit has held that before it can be said that a
10 prisoner's civil rights have been abridged, "the indifference to his medical needs must be
11 substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
12 cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing
13 Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or
14 treating a medical condition does not state a valid claim of medical mistreatment under the
15 Eighth Amendment.  Medical malpractice does not become a constitutional violation merely
16 because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v.
17 County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050
18 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136
19 (9th Cir. 1997) (en banc).  Even gross negligence is insufficient to establish deliberate
20 indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.
21 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of
22 deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

23       Plaintiff alleges that Defendant Coons, who is only qualified to deal with custody issues,
24 put himself in the position of an Optometrist and denied him eyeglasses in violation of his right
25 to adequate medical care. (Complaint at 6.)   Plaintiff also alleges that Defendant Krantz also
26 violated his right to medical care because she would not issue him a visual impairment vest per
27 the Orders of Defendant Bond.  Finally, Plaintiff alleges that Defendant Bond, who is not
28 qualified to deal with medical issues, put himself in the place of an Optometrist and denied him a

6

visual impairment vest. Defendant Bond further directed his subordinate to disregard Plaintiff's requests for a vest. (Complaint at 7.) As such, he alleges, Defendant Bond was deliberately indifferent to Plaintiff's medical needs.

Defendants argue that obtaining a visual impairment vest is not "medical care" and therefore not required by the Constitution. In addition, Defendants note that Plaintiff concedes that a visual impairment is issued for custody purposes only. An inmate wearing a vest is easily identified as one who has a visual or hearing impairment and thus, might not appropriately respond in certain situations. Defendants argue that the denial or delay in Plaintiff's receiving a visual impairment vest does not rise to the level of serious risk to an inmates health protected by the Eighth Amendment.

Defendant's have presented evidence that Plaintiff's allegations against Defendant Coons concern Coon's statement to Plaintiff on November 19, 2003, that Plaintiff would be issued a vest. When there were no vests left to issue, Plaintiff became upset because Defendant Coons "should have did was never made the statement that we would issue him the vest when we get on delta facility." (Deposition at 44:5-8.) Thus, Plaintiff's only basis for naming Defendant Coons in this case is based on a comment made to Plaintiff regarding the vest.

Plaintiff further concedes in his deposition that he had no evidence that Defendant Bond actually directed Defendant Krantz to disregard his request for a vest. Defendants contend that even assuming that such direction by Defendant Bond is true, the fact that Plaintiff did not receive visual impairment vest immediately at his request is not a denial of medical care rising to the level of an Eighth Amendment violation.

Defendants have met their initial burden of informing the Court of the basis of the motion and identifying those portions of the record believed to demonstrate the absence of a genuine issue of material fact. Accordingly, the burden shifts to Plaintiff to demonstrate that a genuine issue of material fact exists. See, Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff did not oppose the Motion for Summary Judgment. Even had he, the Court finds Plaintiff's claims against these Defendants on the basis of his failure to receive a visual

7

impairment vest frivolous.  As noted by Defendants, Plaintiff's chief complaint in this action is that he did not receive a visual impairment vest upon his arrival at PVSP.  Although Plaintiff did allege in his Complaint that Defendant Coons denied him eyeglasses, Plaintiff clarifies in his Deposition that his case against Defendant Coons is based solely on the fact that Defendant Coons stated that Plaintiff should get a visual impairment vest but did not get one.

The same is true with regard to Defendant Krantz, whose presence in this Complaint is based solely on fact that she informed Plaintiff that he would not get a visual impairment vest per her supervisor, Defendant Bond.

Plaintiff's allegation against Defendant Bond is based solely on what he believed Defendant Bond said with respect to the visual impairment vest.  However, even assuming that Defendant Bond directed Defendant Krantz to ignore Plaintiff's request for a vest, Plaintiff concedes in his deposition that a vest was not a medical necessity.  Thus, disregarding such a request would not constitute deliberate indifference in violation of the Eighth Amendment.

The evidence shows that Plaintiff concedes repeatedly throughout his deposition that the sole purpose of a visual impairment vest is to identify him as an individual with a visual impairment.  (Deposition at 55-56; 57:6-11; 58:20-23; 59:19-25; 61:11-13.)   Plaintiff further concedes that his medical condition was not affected by the lack of a vest. (Deposition at 51:24-25; 61:4-7.)   Given these and the undisputed facts set forth, the Court finds there is no genuine issue of material fact and Defendants Bond, Krantz and Coons are entitled to Judgment as a matter of law on the Eighth Amendment claim.

**C. Supervisory Liability**

Plaintiff alleges that Defendant Lewis violated his rights by failing to perform her duties. Specifically, Defendant Lewis delegated her responsibility to respond to grievances to another individual and also failed to inform her staff that she was responsible for treatment, training, discipline and custody.  (Deposition at 35:11-15; 36:9-11.)

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must

be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Defendants argue that preliminarily, there is no constitutional violation or evidence to support an allegation of supervisory liability. Plaintiff does not identify a policy implemented by Defendant Lewis that resulted in a constitutional violation or allege that she personally participated in violating his rights. Moreover, to the extent Plaintiff is complaining about Defendant Lewis' role in the grievance process, he may not obtain relief for an officials involvement in the appeals process cannot serve as a basis for a Section 1983 action.

Plaintiff did not Oppose the Motion for Summary Judgment. Again, the Court has reviewed the record and finds no evidence to support a finding that there exists a genuine issue of material fact on this claim. Plaintiff's allegations against Defendant Lewis are general and consist merely of accusations that she failed to properly train. However, Plaintiff never elaborates on exactly what training was improper and how it resulted in a constitutional violation. Even if the Court assumes that Plaintiff means that the Defendants above named were improperly trained such that they violated his rights, the Court has concluded that there is no genuine issue of material fact on the Eighth Amendment claim and thus, the training afforded these Defendants was not improper.

Accordingly, the Court finds there is no genuine issue of material fact warranting trial on this claim and Defendant Lew is entitled to Judgment as a matter of law.

### D. Qualified Immunity

Having found Summary Judgment warranted, the Court declines to reach the issue of qualified immunity.

## V. CONCLUSION AND RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Motion for Summary Judgment against Defendants Coons, Bond, Krantz and Lewis be GRANTED and the case DISMISSED.

The Court HEREBY ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 13, 2005**                              /s/ Sandra M. Snyder
icido3                                             UNITED STATES MAGISTRATE JUDGE